Good morning. May it please the Court, my name is Martha Loomers and I represent Appellant Palo Alto Town & Country Village. I have hopes of reserving five to ten minutes for rebuttal, but that depends on questions, of course. A number of the cases Venice Market cites have a theme running through them that sometimes, even when the arguments for reversing summary judgment are otherwise good, reversal isn't appropriate because that would be unfair to the district court. Could I ask you just to speak up just a little bit? Oh, certainly. Thank you. I'd like to turn to the question of fairness. We have addressed, I think, the legal points. We've addressed the cases directly, but it occurred to me that it might be useful to give more assurance on the point of whether the court, as a practical matter, had a chance to get it right in this point, in this case. And I think there are two reasons that that's the case here. One, based on the arguments and the small amount of evidence that was actually cited to the judge in this case, he should have been on notice that the issue of the correct occupancy type for the planned use of this premises needed a really critical look. I'm sorry. He should have been more. He should have understood that this was an issue. And there are three things, just as a practical matter. We've made the legal arguments, but I've tried to put myself in the position of a judge looking for that. Admittedly, I don't have that much of my own experience as an arbitrator. But I look at this and say, what might have put a district court on actual practical notice that there was an issue here? And three things stand out. Well, you know, even to the extent that that's correct, which, as a district judge, I have a little difficulty buying. They're supposed to be prescient, among other characteristics. But assuming that's correct, Judge Walker actually said, okay, if you have something that shows that the municipal code is different from what you contend, bring it on. Well, and they did. But didn't. I mean, this is the problem. I mean, it changed the whole theory completely. It wasn't showing that what he had done, the district judge had done so far was wrong. It was saying, ah, yes, but instead of being an A or a B, now it could have been an M, which is just a totally different animal, isn't it? Well, an M in this case is not a totally different animal from whether the small seating area starts out as a B. And that point, there are a couple of things. Even if you assume that the up to the time of the hearing, this issue had not been brought, and even if you assume, as it were, that the ball was a bad throw, it was caught. I mean, the Court in the hearing said, if this is either a B or an M, you win. The Court clearly looked at what Town & Country submitted, and you can tell that for a couple of reasons. One, there had been a surreply filed that had some other additional information in it. In the judge's ruling, he specifically refused to consider that. It was a very express ruling. In that same order, he did not refuse to consider. He was annoyed. He was aggravated. But he looked at it. And another reason that you can tell that he looked at it is because he came up with a theory that nobody else had come up with, which was this mixed use. What Town & Country submitted was a major occupancy M with an accessory use B included within it. This idea of a dual use, which perhaps is possible, but if you look at the UBC, is not the appropriate analysis, was something the judge came up with on his own. How could he come up with that unless he read the law that was in front of him? If he read the law, and it wasn't very much, it was right there. I mean, that's one of the reasons I think the judge had a chance to get it right, because he looked at it. He had the chance. And there were other things that should have put him on notice. One, the Venice markets motion depended on the existence of an unlikely fact. Two, Town & Country challenged the existence of an unlikely fact. And three, the declarations, especially the architect declaration that had been submitted, signaled all over it that there was a ball being hidden here. Well, what's the unlikely fact? The unlikely fact is that the city of Palo Alto would act as if a grocery store was a restaurant. And the reason we know that's unlikely is because Venice markets mutual mistake theory depended on that being unlikely. If that had been the expected order of the world that a grocery store would be treated like a restaurant, then they wouldn't have a mutual mistake argument, would they? Because if that was expected, then their whole case is premised on the idea that the city of Palo Alto treating the space as a restaurant was completely unexpected. If you look at their memorandum of points authorities in support of the summary judgment motion, they set up the mutual mistake argument by saying we saw this as a grocery store that had a small amount of seating. The tenant before us was a retail occupancy. A grocery store is a retail occupancy. Therefore, nobody would expect this to be a change in occupancy. So point one, this is an unlikely turn of events. Point two, town and country did say it didn't buy it. Town and country, and I'll quote. There are two places. In its opposition brief, town and country argued a grocery store with a small amount of seating, quote, would not require any seismic upgrade to the leased premises. That's the excerpts of Record 85. At the hearing, town and country argued, quote, there is no evidence that if they had less than 50 customers, and he's referring here to the small seating area, that they would have been required to do the seismic upgrades that they complain of. So you have an unlikely fact. You have a direct challenge to the unlikely fact. It is true that town and country overshot. They tried to say not only there is no evidence, but we're going to take a run at, you know, hitting the home run here of showing that they actually changed their plans to a large restaurant. That was more than they needed to do. They didn't accomplish that. But if I could analogize it to what a defendant does under Celotex, you've got two choices. You can show that there's a lack of evidence, or you can affirmatively negate a fact. That's the level of what a non-moving party needs to do to say there's no evidence is clearly less than what a moving party would need to do. Okay. Town and country tried to do both. They tried to say there's no evidence, and they tried to say we can also go to a restaurant. They failed on point two. But the fact remained that the challenge was out there. We don't think the evidence shows that the City of Palo Alto took an act that would treat this, a grocery store as a restaurant. It's not common sense that a grocery store would be treated as a restaurant. It's not the law that a grocery store would be treated as a restaurant. So those things alone should put the judge on notice that he ought to look carefully at what he's got in front of him. And then there's this declaration. I understand why you'd want to use hearsay if you don't have a witness available. I mean, that's efficient if you can get away with it. But here they had an available witness. They had this architect who instead of saying they're going to rely on this architect for the UBC analysis, and instead of having him say my analysis of the UBC is that unfortunately this just had to be an A, he doesn't say that. He said two years ago I wrote a letter to my client saying this. And the client said two years ago I got another letter from my architect saying this. But does he vouch for this under oath? No. I mean, the first time I read this before I knew anything about the UBC, I looked through and said there is something wrong with this declaration. So I think the judge was on notice that he had to take a close look. What do you find when you take a close look? Town and country saying there's nothing in here that shows that the city of Palo Alto would have treated a grocery store like a restaurant. So you look, well, is there? There aren't full declarations, but when you look at it, you can't ever put that together. You have a comment, but you can't tell what the comment was based on. The plans that seem to be consistent with what the parties agreed was going to be the use for the premises as a grocery store. They were submitted, but they were submitted after this comment. And then you've got in two pieces of evidence that were not only specifically cited to the court, but were actually cited by the court itself in its order. In one of them the architect treats this as a misunderstanding and says we're going to get back to the city and clarify that we have not changed our occupancy. Same day he writes to his client and says the city will make a final determination from whatever we submit. Would you explain why town and country at the time didn't confuse occupancy load with occupancy? Well, it is – well, I think there are two things. One, occupancy load is – it's a little bit confusing under the uniform building code, the uniform building code, especially when you get to assembly uses, because the building code sometimes talks in terms of number of occupants and sometimes in terms of occupant load. It's not entirely clear that there aren't some times where those are the same, especially if you look at how those terms are used in assembly uses. So it's not – it doesn't spring right out at you. It is true that the analysis that town and country's counsel made on that the whole premises could be a B was incorrect. But it was also incorrect that the whole premises could be an A. And so I think the law of summary judgment is if both sides are wrong, if both sides haven't done their job, who loses? It's the moving party, not the non-moving party. And the places where town and country made the mistake was on a point that it did not have to prove. It was up to Venice Market to prove that either the city of Palo Alto had actually made a determination based on these original plans that a grocery store was a restaurant, seems unlikely, or that under the law that this use should have been categorized as a type A. And that's just not – that's just not in the code. The most natural – the way it should be categorized is as a major occupancy M with a small included accessory type B occupancy, which makes the whole thing treated as an M. That's a very straightforward analysis. You could conceive of it being treated as a dual occupancy. That's not a problem, although even if it were, it was up to them to show it was an A. It would be enough that there's, you know, any way that the city could characterize it that would come out well, given that there had been no final determination. So I think that – yeah, I can't – I can't account for the occupant load mistake, but I think ultimately it doesn't make a difference. Okay. Thank you for the – clarifying your position. If you did want to save some time, I would see the time. I think I will do that. Thank you. Mr. Kline. Good morning. Kenneth Kline, representing Lufthansa. I'd like to get right to this point that counsel has raised, that the judge had before him no evidence to indicate there was a final determination, because I would submit that the judge had sufficient evidence before him to make the ruling he made. First, we have Mulligan at page 43 saying that his, meaning the inspector's condition for requiring an upgrade of the entire building is based upon changing the occupancy type of our space. So in that letter he talked about the fact the inspector was requiring the upgrade. Then at page 35 of the Mulligan declaration, lines 18 to 19, Mulligan says, Max Sabrini, the inspector, quote, determined Venice Market was a restaurant. Again, that was before the judge. The judge read that. It was unchallenged. Then on page 44 of the record, the inspector wrote, and this again was before the judge, building, quote, shall be upgraded seismically to the latest code. He didn't say it might be upgraded. He didn't say it's possible. He said it shall be upgraded, and that was before the judge. Counsel, when the city makes determinations of this kind, are we relying on oral advice from the city engineer, or are we looking for something written? Well, I think the city usually do. I don't know, but I know that we submitted the comment on ER44 where the inspector wrote, building shall be upgraded, and I think it was reasonable for my client and for the judge to conclude, especially when it was unchallenged, that that was something official from the city. Did Venice have an administrative process for administratively reviewing that determination? I don't know. I mean, if you're asking me if, in fact, I don't know the answer to that. If Venice had a means for taking that before a commission or board or challenging it in state court in California, would they be obligated to do that before they would be entitled to claim that there was a mutual mistake of fact and void the contract? Well, the problem here is because it was unchallenged. And, in fact, I'm going to give you one more quote to show not only was it unchallenged, it was conceded. We never got to that. So did I take the time to go and find out whether what the next step would be? No. And I didn't because I read their paper. But, of course, this all has to do with what's going through Venice's mind at the time that you come back and you say, gosh, the inspectors just told us it's going to get classified as a restaurant, and we're going to have to do the seismic upgrade, and it's going to cost us a lot of money. And I'm wondering whether anybody at Venice said, well, gee, is there any way of challenging this thing? Can we take it to the city council? Can we take it into state court? Can we take it before some planning commissioner board and appeal this? I think the best I can say is I think Venice, when they read ER44, where the inspector said the building shall be upgraded seismically to the latest code, I think that, to them, was the end of the ballgame. The inspector's writing that. They can challenge it, but I think they looked at that. But you don't really know what the process was. So we don't even know, for example, whether, in the alternative, whether town and country could have appealed the inspector's determination. I agree with all that. And I guess my position is that that's why it's inappropriate for council to come at this stage of the process and for issues like that to possibly be raised, because they didn't raise them before. We had no reason to do that. We put in what we felt was adequate evidence that a determination had been made, and it wasn't challenged. It wasn't even questioned. And, in fact, the last quote that I wanted to read you, which I think will explain why I can't give you a better answer, comes from the brief that was filed in opposition to the summary judgment motion where I think they deal with this exact point. And that's at ER 85, line 20, through 86, line 3. And this is from their opposition brief to the summary judgment motion. What actually occurred is that the defendants, six months after entering the lease, unilaterally and voluntarily elected to increase the seating from a small amount to as much as 200 people. And this ran afoul of the Palo Alto City Planning and Building Department, which then required, I'll say that again, which then required seismic and other modifications to the lease premises to accommodate this increased occupancy load. So their response was, we're right. It's required. We're going to have to make seismic modifications. And they chose to argue the reason this happened is because you guys changed your plans. And that was the issue. We never got to the issue of, gee, can we do something else, because both sides walked in the court and said, this is what the city is requiring. I would submit that the evidence before the court, especially when you consider that counsel conceded it was required, was more than enough for the court to make the decision that it needed to make in order to grant the summary judgment. Countercountry has come in with many arguments since then. And they say, gee, it's not fair what's happening here, because look at all these other arguments. We think that if you look at all these other arguments, the only fair result is to give us another shot at this. But I would submit that the trial court said it all. He said you can't have a plaintiff who chooses to do no discovery, zero discovery, who doesn't designate any expert witnesses, who walks into court with a theory that is clearly incorrect on the facts, and he gave them a chance to come in and see if they could find anything on the code, which they then did something different. And if you talk about fairness, my position is, our position is, that they had every chance here. They just didn't do anything. And to then say it's not fair that we should lose, because there's lots of other theories, that had we done some discovery and had we gotten an expert we could have presented on that day in court, that that wouldn't be fair at all to make a decision based on what they could have, should have, might have done. It should be based on what they did do, what was before the court, and I would submit that the court had sufficient evidence to make the ruling it did. Any questions? Thank you, Mr. Kline. Ms. Lomers. Every comment that Mr. Kline made about why there had been an actual determination by the City of Palo Alto based on the original plans goes back to the Max Severy, April 9th, comment that came before there was any indication the City ever had the original plans. Point one. Point two, Judge Bybee asked about what would be the next steps and took it actually farther than we've ever taken it in terms of administrative hearings and appeal. We didn't take it any farther than that, because there was clearly a next step, even at the informal level at the City. In the very letters that Mr. Kline has just cited that went to the architect's client in which he says the City has made this determination, again, each time attaching the same written memo from Max Severy of the inspection department. I mean, it realizes the awkwardness of your position here, but the point is that the final determination aspect simply wasn't challenged. Well, the issue of a final determination in some sense is a subset of the question of whether there was any determination at all based on the original plans, because final or determination, it's absolutely irrelevant what stage it was at if it was not based on the original plans. And there is no evidence, zero evidence that it was based on the original plans. And on that point at least, Town and Country was steadfast. It never admitted, it never for a moment budged from its position that the determination, if any, was based on something other than the original plans. It merely overshot as to not saying just that there's no evidence that it wasn't on the original plans. It tried to fill in the hole of what was there. The fact that it bungled that should not make a difference here. But getting back to the next steps, the architect thought there was a next step. The architect, in his letter, the same letter in which he attaches this comment, says, quote, our office will review the capacities of the space to verify that we have not changed the occupancy type and respond to the city of Palo Alto. The next letter in which he attaches the same memo from Max Seberry dated before the original plans were submitted, quote, the building department will make a final determination from the information we submit. Now, there was no, while Town and Country was laboring under this more aggressive plan of showing that it was, that they had actually changed their plans to a restaurant, and there was, you know, that goes back to a comment. They believed that that had happened. The president of the company had died. The evidence issues were awkward there. But they were, that's what they thought had happened. And so they were pursuing that. It's clear that even, it didn't really matter where it was in the process. If Venice Market had changed its plans to a large restaurant, it didn't matter where it was in the process, because it was going to be an A if that had happened. And so there wasn't a reason under that theory to talk about it once and all. But it was enough to say it was not based on the original plans. And I guess if, I guess I have a few more minutes. The other thing here in terms of what the district court might have been doing is, you know, admittedly I've gone in, you know, I've read these letters. I've paid attention to every word. Is that something we ask of district court judge, of district court judges? I'd say in this case that wasn't too taxing a responsibility. The cases in which we talk about fairness of the district court judge involves huge quantities of files. In the Carmen case, we were talking about eight to nine inches when you squished them together. In this case, I tried squishing them together, and I don't think I came up to an eighth of an inch. In the Guarino case, we were talking about 660-plus pages. Here we are talking, I looked at every page that was actually cited and eliminating duplicates but giving full credit for every single time the Max Seberry memo was in there. I came up with 22 pages, only one of which was small print, the least, and that everybody cited the same one sentence, which was what was the plans for this. We have a handful of pages here. We have a couple of provisions of law. The court was on notice that this was a challenged issue. It is not too much to ask. If a court is clearly under the law, under the burden to take a close look when somebody doesn't show up at all, and it's clearly the law that Mr. Klein has argued as if we are still in a place where we penalize people for not showing up. It's a bad strategy, no question about it. But the law of this circuit is clear that even if you don't show up, the judge has the obligation to take a critical look at the things that are specifically in front of him. Here, the very things that he not only were specifically cited to him, but that he even quoted in his order, are the very things that we are able to rely on now to show that Venice Market did not meet its burden. And for that reason, the summary judgment needs to be reversed. Thank you. Okay. Thank you, counsel, for your argument. The matter just argued will be submitted.
judges: Rymer, Hawkins, Bybee